NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DONNIE E. BOYD,                        )
                                       )
        Plaintiff,                     )     Civil Action No.: 03-cv-3716 (JLL)
                                       )
v.                                     )
                                       )     **OPINION AND ORDER**
                                       )
OWENS CORNING FIBERGLASS and           )
TEAMSTERS UNION LOCAL #408,            )
                                       )
                                       )
        Defendants.                    )

**LINARES**, District Judge.

This matter is before the court on the motion of Defendant Owens Corning Fiberglass (hereinafter "Defendant" or "Owens Corning") for summary judgment pursuant to Fed. R. Civ. P. 56(c). Plaintiff Donnie E. Boyd (hereinafter "Plaintiff" or "Boyd"), who is pro se, commenced suit against Owens Corning on various claims of discrimination and wrongful termination. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. This motion is resolved without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated herein, Defendant's motion for summary judgment is GRANTED.

**FACTUAL AND PROCEDURAL BACKGROUND**

For purposes of the instant motion, the relevant facts are as follows. Owens Corning is a international company, involved in, among other things, the production of roofing shingles. (Defendant's Local Civil Rule 56.1 Statement of Uncontested Facts (hereinafter "Def.'s

Statement"), ¶1).  Owens Corning operates a roofing shingle production facility in Kearny, New Jersey.  (Def.'s Statement ¶2).   On May 5, 1998, Boyd, an African-American male, began employment as a Mat Tender at the Kearny facility.  (Id. ¶3).  His duties included placing mats of raw shingles onto the production line and ensuring that the mats did not contain holes or other noticeable defects.  (Id. ¶15).

The terms and conditions of Boyd's employment at Owens Corning were governed by a collective bargaining agreement (hereinafter the "CBA") that existed between Owens Corning and the Building Materials, Heavy Highway & Construction Industries, Drivers, Helpers & Warehousemen Teamsters Union Local 408 (hereinafter the "Union").  (Def.'s Statement ¶4; Certification of Thomas Masselli (hereinafter "Masselli Cert."), Ex.A at Article II, Section 1(E)).  Under the terms of the CBA, Owens Corning retained "the right to promote, demote, discipline, suspend, discharge for just cause, layoff, and transfer" any employee governed by the CBA.  (Id. ¶6).  Owens Corning had a progressive discipline policy in place that covered job performance as well as employee attendance and lateness issues.  (Masselli Cert. ¶4).  Under this policy, verbal warnings were followed by written warnings, and if the problems continued to persist, suspensions were imposed.  (Id. ¶5).  A suspension could range from one to three days in duration, depending upon the infraction, and successive suspensions could range from three to five days.  (Id. ¶6).

On December 2, 1998, Boyd received an attendance warning for being late to work.  (Def.'s Statement ¶21).  Boyd acknowledged the attendance warning by signing an Owens Corning Personnel Action Form ("Personnel Action Form") in accordance with Owens Corning policy.  (Id.; Masselli Cert. Ex.B).  On February 5, 1999, Boyd received a verbal job performance warning and again, acknowledged the warning by signing another Personnel Action

Form.  (Def.'s Statement ¶22; Masselli Cert. Ex.C).  On June 29, 1999, Boyd received another verbal warning for arriving to work late and/or leaving work early, and again signed a Personnel Action Form.  (Def.'s Statement ¶23; Masselli Cert. Ex.D).

On January 18, 2000, Boyd received a written attendance warning that covered five separate attendance-related incidents within a nine-month period.  (Def.'s Statement ¶24; Masselli Cert. Ex.E).  Thereafter, in April 2000, Boyd was suspended from work for three days following a series of eight unexcused absences that covered an eleven-month time period.  (Def.'s Statement ¶25; Masselli Cert. Ex.F).  Although Boyd does not recall the details of the three-day suspension, he acknowledges signing the Personnel Action Form advising of the suspension.  (Certification of David E. Strand (hereinafter "Strand Cert."), Ex.A at 52; Masselli Cert. Ex.F).

In February 2002, Owens Corning terminated the employment of James Redding, an African-American male, who worked as a Back End Relief operator.  (Def.'s Statement ¶¶27-28).  The Union advised Owens Corning of its intent to arbitrate Redding's termination with the understanding that Redding would return to the position in the event of a favorable decision.  (Id. ¶¶ 29, 43-44).  Consequently, Owens Corning announced Redding's available Back End Relief position on a temporary basis.  (Id. ¶¶ 28-29).  Both Boyd and Octavio Guzman, a Hispanic employee, bid for the open Back End Relief position in March 2002.  (Def.'s Statement ¶30; Masselli Cert. ¶15).  Thereafter, pursuant to the CBA, the temporary position was awarded to Boyd based on seniority.  (Def.'s Statement ¶31).  This position constituted a promotion for Boyd.

According to Boyd's supervisors, Joseph Barone and Thomas Masselli, Boyd's performance during the first forty-five day training period as a Back End Relief Operator was

substandard. (Def.'s Statement ¶32; Certification of Joseph Barone (hereinafter "Barone Cert."), ¶7; Masselli Cert. ¶16). By letter of June 17, 2002, Barone advised the Union that Boyd's performance as back End Relief operator was not acceptable, and that Boyd would be returned to the previous position of Mat Tender. (Barone Cert. ¶8 and Ex.A). In June 2002, Boyd was demoted to Mat Tender, and Guzman was promoted into the Back End Relief operator position. (Def.'s Statement ¶35). Thereafter, Boyd filed a grievance over the demotion on or about June 15, 2002. (Id. ¶36; Barone Cert. Ex.B).

On August 1, 2002, while Boyd's grievance was still pending, he received a verbal job performance warning, and acknowledged same by signing another Personnel Action Form. (Def.'s Statement ¶37). On August 16, 2002, Boyd was suspended for one day from his Mat Tender position for abandoning his work station at the end of a shift. (Id. ¶38). Boyd apparently refused to sign the Personnel Action Form in connection with this incident; it was therefore signed by Barone, the Union shop steward. (Id.; Barone Cert. Ex.D). On August 30, 2002, Owens Corning reached an agreement with the Union regarding Boyd's grievance and removal from the temporary Back End Relief operator position, and he was consequently given a second opportunity at the position. (Def.'s Statement ¶¶ 39-40). Barone notes, however, that "Boyd's second attempt at training and qualifying for the temporary Back End Relief position was not better than his first and his performance was again substandard and not acceptable." (Barone Cert. ¶15).

In October 2002, an Arbitrator issued an Opinion and Award in connection with Redding's prior termination from the Back End Relief operator position. (Masselli Cert. ¶23 and Ex.H). The Arbitrator found that there was not proper cause for the termination, and ordered that Redding be reinstated. (Masselli Cert. Ex.H). Redding was restored to the position of the

Back End Relief operator, and Boyd was returned to the Mat Tender position.  (Def.'s Statement ¶¶44-45).

On October 25, 2002, Boyd received yet another verbal warning for excessive absenteeism.  (Def.'s Statement ¶46).  Thereafter, on November 21, 2002, Boyd abandoned the Mat Tender work station for a second time and was suspended for five days.  (Id. ¶51).  This five-day suspension was reduced to three days as the result of grievances filed by both Boyd and the Union.  (Id. ¶52).  Boyd also received a separate three-day suspension for falsification of work data.  (Id. ¶54).

On November 30, 2002, upon return to work from the aforementioned three-day suspension, Boyd ignored workplace procedure and entered the company exercise room without disabling the security alarm system, prompting local law enforcement to respond.  (Def.'s Statement ¶¶ 56-57).  As a result, Boyd was suspended pending further investigation.  (Id. ¶58).  There was an internal investigation, and Owens Corning determined that Boyd ignored instructions given by the Human Resources Leader as well as the immediate supervisor.  (Def.'s Statement ¶59).  Owens Corning consequently terminated Boyd's employment on December 2, 2002 due to insubordination and continued substandard job performance.  (Id. ¶¶ 60, 63).  Boyd unsuccessfully grieved the termination and the Union elected not to arbitrate.  (Id. ¶¶ 61-62).[1]

On April 23, 2004, Boyd filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Owens Corning discriminated against him by failing to promote him "because [he was] Black," and further, that it terminated him based upon his race.  (Def.'s Statement ¶72-73; Strand Cert. Ex.C).  On August 7, 2003,

---

[1] Within three months of termination from Owens Corning, Boyd secured a similar position at United States Gypsum (hereinafter "Gypsum").  (Def.'s Statement ¶64).  After a year and a half at Gypsum, Boyd was terminated due to similar job performance issues that existed during his employment with Owens Corning.  (Id. ¶¶ 66-67, 70).

Boyd commenced the instant action on various claims of discrimination and/or retaliation, premised on Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq.[2]  Boyd's handwritten Complaint alleges, inter alia, both racial and religious discrimination on the part of Owens Corning.[3]  (Compl. ¶10).  Boyd's religious discrimination claim is grounded in Owens Corning's failure to include certain Islamic holidays as paid days off within the CBA.  (Strand Cert. Ex.A at 16-17).  Boyd's Complaint sets forth no new facts and relies entirely on the factual allegations contained in the EEOC charge.  (Compl. ¶¶9-11).

Present before this Court is Owens Corning's motion for summary judgment.  Boyd has filed no papers opposing the motion.[4]

## LEGAL STANDARD

**A.    Summary Judgment**

Fed. R. Civ. P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Orson, Inc. v. Mirimax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township,

---

[2] Originally, Plaintiff initiated this action against Owens Corning as well as the Union.  By Order entered April 12, 2004, this Court denied the Union's motion to dismiss Plaintiff's Complaint for failure to state a claim, and concurrently granted the Union's motion for a more definite statement.  Plaintiff was ordered to file an Amended Complaint within 30 days.  Plaintiff failed to file and serve the Amended Complaint, and consequently, this Court dismissed Plaintiff's Complaint against the Union with prejudice by Order entered May 20, 2004.

[3] It should be noted, however, that Boyd's EEOC charge makes no mention of religious discrimination, and he only marked the "Race" box in identifying the cause of the alleged discrimination.  (Strand Cert. Ex.C).

[4] A Certification of Service filed by counsel for Owens Corning, David E. Strand, Esq., and dated November 10, 2004, reveals that service of the instant motion was made upon Plaintiff.

772 F.2d 1103, 1109 (3d Cir. 1985), cert. denied, 475 U.S. 1013 (1986).  In considering a motion for summary judgment, all evidence submitted must be viewed in a light most favorable to the party opposing the motion.  Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995); Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1413 (3d Cir.), cert. denied, 502 U.S. 941 (1991).

The party opposing the motion for summary judgment cannot rest on mere allegations and must instead present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995); Sound Ship Bldg. Corp. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir.), cert. denied, 429 U.S. 860 (1976).  However, a mere "scintilla" of evidence in favor of the non-movant is insufficient to withstand a summary judgment motion.  Liberty Lobby, 477 U.S. at 252.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  Id. at 255.  The inquiry is whether there is enough evidence so that under the governing evidentiary standard, a reasonable juror would be able to find for either the plaintiff or the defendant.  Id.

When, as here, the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the court "will accept as true all material facts set forth by the moving party with appropriate record support."  Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).  That is to say, failure to oppose a motion for summary judgment effects a waiver of the right to controvert the facts asserted by the moving party.  Id. at 175-76.  Such failure to oppose the motion does not, however, allow the district court to automatically grant a motion for summary judgment.  Jaroma v. Massey, 873

F.3d 17, 20 (1st Cir. 1989). Such a rule would violate Fed. R. Civ. P. 56(e) ("If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.") (emphasis supplied). The "appropriateness" of summary judgment requires the court to determine that the moving party demonstrate that it is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175; Bowers v. Nat'l Collegiate Athletic Ass'n, 118 F. Supp. 2d 494, 510 (2000). Thus, summary judgment is not properly entered in favor of the moving party based solely on a failure to oppose the motion, without a determination that the moving party is entitled to judgment as a matter of law based on facts set forth in the motion. Anchorage Assocs., 922 F.2d at 171.

With this legal framework in mind, the Court will now address Owens Corning's motion for summary judgment.

## DISCUSSION

### A. Wrongful Termination

Boyd alleges that his termination from Owens Corning was based on race, in violation of Title VII. (Compl. ¶¶9-10). Section 2000e-2 of Title 42 of the United States Code provides, in pertinent part:

> It shall be an unlawful employment practice for an employer –
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…

42 U.S.C. § 2000e-2 (a)(1). The Third Circuit applies the burden-shifting analysis announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Iadimarco v. Tunyon, 190 F.3d 151, 157 (3d Cir. 1999). Initially, a plaintiff has the burden of demonstrating by a preponderance of the evidence a prima facie case of discrimination. McDonnell Douglas, 411

U.S. at 802.  Once the plaintiff has established a prima facie case, "[t]he burden [of production] then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Id. at 802.  Finally, if the employer proffers some evidence of a legitimate, nondiscriminatory reason, then the plaintiff must "be afforded a fair opportunity to show that [employer's] stated reason for [plaintiff's] rejection was in fact pretext" masking an otherwise discriminatory animus.  Id. at 804.

In the context of a claim of wrongful termination, the Third Circuit has held that the plaintiff must "'prov[e] by a preponderance of the evidence that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was dismissed despite being qualified; and (4) he ultimately was replaced by a person [outside the protected class].'"  Marzano v. Computer Sci. Corp., 91 F.3d 497, 503 (3d Cir. 1996) (quoting Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir.), cert. dismissed, 483 U.S. 1052 (1987)); see also Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1066 n.5 (3d Cir. 1996), cert. denied, 521 U.S. 1129 (1997).  In the instant matter, Owens Corning does not dispute that Plaintiff is a member of a protected class or that he was discharged.  (Def.'s Br. at 5). Owens Corning maintains, however, that Plaintiff's claim of wrongful termination based on race should be dismissed because Plaintiff is unable to meet all of the elements necessary for a prima facie case of racial discrimination under Title VII.  This Court agrees.

This Court finds that Boyd has failed to establish the second part of his prima facie case, i.e., that he was qualified for the position of Mat Tender.  To establish that he was qualified, Boyd must "demonstrate that he was performing his job at a level which met his employer's legitimate expectations at the time of the termination."  Henwood v. EMC2 Corp., 1993 WL 360776, *4 (D.N.J. Sept. 13, 1993) (citing Ang v. Proctor & Gamble Co., 932 F.2d 540, 549 (6th

Cir. 1991)); see also Gorham v. American Tel. & Tel. Co., 762 F. Supp. 1138, 1144 (D.N.J. 1991) (finding that plaintiff therein failed to rebut evidence proffered by defendant that she was performing unsatisfactorily at the time of her termination from employment).  In support of its motion for summary judgment, Owens Corning has offered evidence showing that Boyd was discharged from Owens Corning because he was not performing his duties satisfactorily. It is uncontroverted that Plaintiff received numerous warnings for excessive absenteeism and substandard work performance during his tenure at Owens Corning.  The record clearly reveals that Plaintiff had not performed as Mat Tender to Owen Corning's satisfaction or expectations.  Accordingly, Plaintiff has failed to meet his prima facie case of discrimination and as a matter of law this court rules that no material issues remain for trial.  Hence, Boyd cannot satisfy his burden of establishing a prima facie case of discrimination under Title VII.

Given that Boyd has failed to establish a prima facie case, the Court need not examine whether Owen's Corning's proffered reasons for the termination were pretextual.

**B.     Failure To Promote**

A plaintiff claiming a failure to promote under Title VII must carry the initial burden of establishing a prima facie case of unlawful discrimination.  The plaintiff must thus establish that "he or she (1) belongs to a protected category; (2) applied for and was qualified for a job in an available position; (3) was rejected [despite his qualifications]; and (4) after the rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications for the position," or the position was filled with a person not of plaintiff's protected class.  Bray v. Marriott Hotels, 110 F.3d 986, 989-90 (3d Cir. 1997) (citing McDonnell Douglas, 411 U.S. at 802); see also Barber v. CSX Distrib. Svcs., 68 F.3d 694, 698 (3d Cir. 1995); Valdes v. Union City Bd. of Educ., 2005 WL 1225105, *7 (D.N.J. Apr. 29,

2005). If the plaintiff meets these elements, the burden of production then shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Bray, 110 F.3d at 990 (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). "The employer must then come forth with evidence, which, if taken as true, demonstrates that there was a nondiscriminatory reason for the decision not to promote the plaintiff." Bray, 110 F.3d at 990. If the employer satisfies this burden, the plaintiff must present evidence from which a reasonable factfinder could conclude that the employer's explanation for the alleged discriminatory decision is pretext masking an otherwise discriminatory animus. Id. If plaintiff fails to do so, the defendant employer is entitled to a judgment as a matter of law. Id.

Here, Owens Corning does not contest that Boyd is a member of a protected class, however, it does maintain that Boyd is unable to establish all of the elements of the prima facie case of discriminatory treatment. (Def.'s Br. at 16). Owens Corning argues that despite two attempts, Boyd failed to prove that he was qualified for the position of Back End Relief operator. In analyzing whether Boyd was qualified for the position of a Back End Relief operator, this Court "must confine its inquiry to the objective qualifications related to the position" at issue. Santiago v. City of Vineland, 107 F. Supp. 2d 512, 532 (D.N.J. 2000) (quoting Watson v. City of Salem, 934 F. Supp. 643, 654 (D.N.J. 1995) (citing Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 523 (3d Cir. 1992), cert. denied, 510 U.S. 826 (1993)). Owens Corning represents that Boyd was subject to a 45-day "training/qualifying" period in connection with the Back End Relief position. (Masselli Cert. ¶16; Barone Cert. ¶7). It maintains that Boyd was not qualified for the position of Back End Relief operator because his performance during the training period was substandard. During Boyd's initial attempt at the position, Barone, the Operations Leader at Owens Corning's Kearny facility at the time, determined that his

performance during this period was "not acceptable," and made the decision that Boyd would be returned to the Matt Tender position. (Barone Cert. ¶8). In a June 17, 2002 memorandum to the Union, Barone notes,

> Donnie Boyd lacked the initiative, motivation and the capacity to perform the back end relief tasks. Although Donnie is able to operate the mat and press section, he was making little progress understanding the more dynamic and detail oriented functions including the coater and slater operations. It was also recognized that Donnie's ability to engage when it came to process reconciliation (i.e. mat breaks, stickers, etc.) was non- existent. Simply put, Donnie appears lethargic in his work ethic, subsequently exonerating him as a candidate for his demanding job responsibility.

(Barone Cert. Ex.A). Boyd was subsequently demoted back to the Mat Tender position in June 2002, from the temporary position. Although Boyd had been temporarily promoted again to the position of Back End Relief operator in September 2002, his performance was again deemed to be substandard. (Barone Cert. ¶15). Masselli, the Plant Manager of the facility at the time, states,

> Unfortunately, Boyd's second attempt at training and qualifying for the temporary Back End Relief position was not better than the first and his performance was again substandard and not acceptable.

(Masselli Cert. ¶22).

     Based on the foregoing, this Court can not say that Boyd was qualified for the Back End Relief position. Moreover, the Court notes that the employee ultimately promoted to the position was also African-American, and therefore a member of the same protected class as Boyd. Thus, Plaintiff fails to meet the final element of the his prima facie case. Plaintiff has,

therefore, failed to satisfy his burden of presenting a prima facie case of discrimination against Owens Corning based on discrimination in promotion.[5]

**B.     Religious Discrimination**

Boyd also alleges religious discrimination under Title VII of the Civil Rights Act of 1964 against Defendant.  Boyd claims that Owens Corning failed to include certain Islamic holidays as paid days off within Owens Corning's CBA.  (Strand Cert. Ex.A at 16-17).  Title VII makes it unlawful for an employer to discriminate against an employee based on the employee's religion. 42 U.S.C. § 2000e-2(a)(1).  The term "religion" includes "all aspects of religious observances and practices, as well as beliefs ...."  42 U.S.C. § 2000e(j).  Owens Corning contends that Boyd failed to exhaust his administrative remedies with respect to his claim of religious discrimination under Title VII.  Specifically, Owens Corning argues that Boyd failed to submit his claim first to the EEOC, in violation of 42 U.S.C. § 2000e-5.

Prior to the institution of an action under Title VII, a plaintiff must timely file his claim with the EEOC and receive a right to sue letter from the agency.  42 U.S.C. § 2000e-5.  A timely charge of discrimination with the EEOC is not jurisdictional, but rather, is comparable to a statute of limitations.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Anjelino v. The New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999).  Accordingly, claims brought pursuant to Title VII can be dismissed for failure to exhaust such administrative remedies. Anjelino, 200 F.3d at 87-88; Knoll v. Springfield Township Sch. Dist., 699 F.2d 137, 145 (3d Cir.1983), vacated on other grounds, 471 U.S. 288 (1985); Santiago,  107 F. Supp. 2d at 528.

In this case, Owens Corning argues that Boyd's charge of religious discrimination must be dismissed as a matter of law for failure to exhaust administrative remedies required by 42

---

[5] As Boyd fails to establish a prima facie case, the Court need not engage in the McDonnell Douglas burden-shifting analysis.

U.S.C. § 2000e-5.  Boyd's EEOC charge, which alleges race discrimination, makes no reference to a Title VII religious discrimination claim.  (Strand Cert. Ex.C).  He only states as follows: "I believe that I have been discriminated against by not being promoted and by being discharged, in violation of the Civil Rights Act of 1964, as amended (Title VII), and because of my race (Black)."  (Id.).  The Court also observes that Boyd marked only the "Race" box in the "Cause of Discrimination" section of the EEOC charge.  (Id.).

Under Third Circuit precedent, however, a plaintiff is excused from exhausting such administrative remedies when the acts alleged in the subsequent suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.  Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984) (per curiam)); see also Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984) (quoting Ostapowics v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976), cert. denied, 429 U.S. 1041 (1997)).  In Antol, for example, the Third Circuit held that "an employee's gender discrimination claim was not subsumed within the appellant's EEOC complaint based upon disability discrimination."  Antol, 82 F.3d at 1295.  In so finding, the Antol Court rejected the appellant's argument that the disability charge encompassed the gender claim because an EEOC investigation would have revealed the gender issues.  Id. at 1296.  The Court held that "the investigation focused, quite properly … on the gravamen of [appellant's] complaint – disability discrimination.  Neither the EEOC nor the [appellee] were put on notice of a gender discrimination claim."  Id.

Boyd is not excused from exhausting his administrative remedies with respect to his claim under Title VII because his religious discrimination claim is not within the scope of either the EEOC charge or its reasonable investigation.  Plaintiff Boyd filed a charge of race

discrimination with the EEOC alleging that Owens Corning discriminated against him by terminating his employment as a Mat Tender and failed to promote him as a Back End Relief operator. Boyd's Title VII religious discrimination claim can not be said to be within the scope of his previously filed race discrimination charge or "the EEOC investigation which can reasonably be expected to grow out of the charge of [race] discrimination." Santiago, 107 F. Supp.2d at 529 (citing Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966-67 (3d Cir. 1978)). The facts associated with Boyd's religious identity claim are separate and distinct from those associated with his racial discrimination charges. Furthermore, there are no allegations set forth in the charge that would put the EEOC on notice that Plaintiff Boyd was also the victim of religious discrimination. Plaintiff checked only the "Race" box on the EEOC charge and his allegations filed with the agency refer only to discrimination based upon race. (Strand Cert. Ex.C). The box for identifying religious discrimination was not marked and there was nothing in the body of the EEOC charge that would put the agency on notice that Plaintiff was a victim of religious discrimination. (Id.). Thus, it is clear that Boyd is not excused from exhausting his administrative remedies. Accordingly, the Court finds that Boyd failed to exhaust his administrative remedies with respect to his Title VII religious discrimination claim, and, therefore, the Court shall grant summary judgment on this claim.[6]

---

[6] Defendant further contends that Plaintiff's claim for religious discrimination under Title VII must be dismissed for failure to establish a prima facie case. To prevail in a Title VII religious discrimination case, a plaintiff must show that: "(1) he or she had a bona fide belief that compliance with an employment requirement would be contrary to his or her religious belief or practice; (2) he or she informed the employer about the conflict; and (3) he or she was discharged or penalized for failing to comply with the conflicting employment requirement." Saruddin v. City of Newark, 34 F. Supp. 2d 923, 925-926 (citations omitted). The Court need not reach the merits at this juncture, as the Court has deemed that the claim is dismissed as a matter of law for failure to exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, it is on this 12th day of August, 2005,

**ORDERED** that Defendant Owen Corning's motion for summary judgment is GRANTED with respect to Plaintiff Boyd's Title VII claims of wrongful termination; and it is further

**ORDERED** that Defendant is also GRANTED summary judgment on Plaintiff's Title VII claim of failure to promote based on race, and it is further

**ORDERED** that Defendant's motion for summary judgment is also GRANTED as to Plaintiff's claim of Title VII religious discrimination; and it is further

**ORDERED** that Plaintiff's Complaint is hereby DISMISSED.

This case is closed.

/s/ Jose L. Linares
DATED: August 12, 2005                UNITED STATES DISTRICT JUDGE